COUSINO, APPELLANT, *v.* COUSINO, APPELLEE.

450

(No. 4527—Decided March 26, 1951.)

Mr. *Virgil E. Clark,* for appellant.
Mr. *Stephen Fazekas,* for appellee.

CARPENTER, J. The parties to this action were married in 1928, and four children were born to them.

This action was instituted in 1947 for alimony, custody and support of the four children, and to enjoin the defendant from "harming or molesting" plaintiff. The grounds were habitual drunkenness and gross neglect of duty. At the time of the hearing, one child was married and the other three were minors living at home. Three motions for temporary alimony and support for the children were filed and orders made on them, but none was to any extent obeyed.

On August 1, 1949, an amended petition was filed charging habitual drunkenness, gross neglect of duty and extreme cruelty. The prayer was for divorce, custody and support of the children and that defendant's interest in the home, owned jointly by the parties, and his interest in the estate of his deceased father, then being administered, be awarded to plaintiff.

Defendant answered admitting the marriage and denying all other allegations. On hearing of the cause, the court found that the parties "were living in the same home at the time this cause came on to be heard," and dismissed the petition and amended petition "on authority of the *Smith case,*" meaning *Smith* v. *Smith,* 86 Ohio App., 479, 92 N. E. (2d), 418.

This appeal on questions of law from that judgment was perfected by plaintiff.

The testimony of the plaintiff and of her corroborating witness, a relative by marriage of the defendant, was that defendant drank heavily during practically all their married life, was intoxicated a great deal of the time, and spent much of his earnings for liquor. In a large measure, this was admitted by defendant. Plaintiff worked and with her earnings supported the family. She purchased for $1,500, the home where the family lived, and repaired and improved it until it is now a fair home. Defendant testified that his wife worked and that she was a "saver."

Both parties testified that for some years they have occupied separate rooms in the house, she with some of the children. She denied that they had had sex relations while the action was pending. He said that they had had such relations within three weeks of the hearing, which was in July 1950, and in the previous January, after she had purchased a Plymouth automobile for him to use. These are the only times he mentioned that subject.

At the close of all the evidence and before entering judgment, the court commented on the evidence, particularly that relative to the parties continuing to live in the same house during the pendency of the action. The court did not state what its conclusion was on the question of sex relations. In fact that matter was not taken seriously, and well it might not be in a determination of which of these parties was to be believed.

The real legal question is whether the plaintiff, by her conduct, condoned the alleged acts of aggression of the defendant. It is generally accepted that continuation of sex relations operates as condonation and is a defense to an action for divorce or alimony. As a defense it should be pleaded. This was not done by defendant in this action. No finding on the subject of condonation was made by the court, nor was the sub-

ject mentioned either in its discussion of the evidence or in the journal entry. In the entry the only conclusion of fact adverse to plaintiff was that the parties "were living in the same home at the time this cause came on to be heard."

The *Smith case, supra,* on which the court relied, was an action for alimony. In it there was a statement by the plaintiff, in a motion to dismiss the cross-petition, that the parties had "cohabited together in the same home and in the same bed, during all of the time that said cross-petition has been pending in this court." The conclusion in that case that they were not living "separate and apart" was correct and it was obvious that the plaintiff had condoned the alleged acts of aggression.

The statutes on divorce and alimony, Sections 11979 to 12003, General Code (now Sections 8003-1 to 8003-23, General Code), nowhere spoke on this subject. The nearest to it was Section 11997 (now Section 8003-18, General Code), which stated the grounds for an allowance of alimony and in subdivision four provided "that there is a separation in consequence of ill treatment on the part of the husband * * *." The courts have said that the parties must live "separate and apart" during the pendency of the action, but, except for a statement in *Smith* v. *Smith, supra,* it has not been said that they can not do that within the family home. It was the experience of the writer when a trial judge that where there were several children it was sometimes an economic necessity for their support that the home shelter both parents.

On this state of the record, the judgment was manifestly against the weight of the evidence and it is, therefore, reversed and the cause remanded for a new trial.

*Judgment reversed.*

Fess and Conn, JJ., concur.